UNITED STATES, Appellee,

v.

**Rodney J. DAOUST,**
**Defendant, Appellant.**

No. 89–2115.

United States Court of Appeals,
First Circuit.

Heard Sept. 5, 1990.

Decided Oct. 18, 1990.

Leonard I. Sharon, by appointment of the Court, for defendant, appellant.

F. Mark Terison, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., was on brief, for appellee.

Before BREYER, Chief Judge, VAN GRAAFEILAND,* Senior Circuit Judge, and SELYA, Circuit Judge.

BREYER, Chief Judge.

Rodney Daoust appeals his conviction for unlawful possession of firearms by a convicted felon pursuant to 18 U.S.C. §§ 922(a)(6), (g)(1) and (h)(1). He argues that the district court should have suppressed the firearms as evidence at his trial, because, in his view, the police seized them in violation of the fourth amendment. We disagree with Daoust, and we affirm his conviction.

Daoust makes two arguments. First, he claims that the search warrant which authorized the police to seize a weapon from his house was invalid. The warrant permitted the officers to seize a "semi-automatic handgun, blue steel in color." The police obtained the warrant, in part, by telling the issuing judge that they had "observed" the gun "hanging from the ceiling over the kitchen sink" in Daoust's house. The police officers first saw the gun on August 21, 1987, when they looked through a back window in Daoust's house.

* Of the Second Circuit, sitting by designation.

■ Daoust agrees that officers have a right to observe (and, *a fortiori*, to apply for a warrant to seize) an object that falls in their "plain view" so long as they have "a right to be in the position to have that view." *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968) ("It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."). But, Daoust says, the officers had no right to be at the back of his house looking through the window and consequently the observation, the warrant, and ultimately the seizure of the gun, violated the Constitution. The legal question is whether the police had a right to be at the back of the house where they saw the gun, or whether they were simply snooping.

The record reveals that Maine police officers, while investigating illegal drug activities, learned that Daoust might have useful information. On August 11, they went to his home, an isolated log house dug into the side of a hill, apparently without electricity or telephone, down a driveway off a dirt road. They found the front door inaccessible, as it was five feet above ground and had no steps. They saw no car, but they noticed toys in the driveway. They knocked on a glass cellar door, got no answer, and left. They returned on August 24. They knocked again on the glass cellar door and got no reply. They then walked up the slope (apparently a four to seven foot unlandscaped bank) to the back of the house and continued all the way around it. While they were at the back, one of the officers looked up through a kitchen window, the bottom of which was just at or just above his head, and saw the gun hanging above the sink.

A policeman may lawfully go to a person's home to interview him. *See Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1964); *United States v. Wheeler*, 641 F.2d 1321, 1327 (9th Cir.1981); *United States v. Anderson*, 552 F.2d 1296, 1300 (8th Cir. 1977); *United States v. Bradshaw*, 490 F.2d 1097, 1100 (4th Cir.), *cert. denied*, 419 U.S. 895, 95 S.Ct. 173, 42 L.Ed.2d 139 (1974). In doing so, he obviously can go up to the door, *see Davis*, 327 F.2d at 303, and, it seems to us, if that door is inaccessible there is nothing unlawful or unreasonable about going to the back of the house to look for another door, all as part of a legitimate attempt to interview a person. *See, e.g., Anderson*, 552 F.2d at 1300 (reasonable for police to proceed to rear of house to look for back entrance); *Wheeler*, 641 F.2d at 1327 (reasonable for police to stand on tires to look over fence to see if anyone is at home); *United States v. Hersh*, 464 F.2d 228, 230 (9th Cir.), *cert. denied*, 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 301 (1972) (reasonable for police to look through window while standing at front door trying to locate and interview defendant). *But cf. Texas v. Gonzales*, 388 F.2d 145, 147 (5th Cir.1968) (police have no right to look through window simply to see if drug activity is taking place inside).

On the basis of this record the district court found that the police went to the back "looking for an accessible main floor entrance" not to see if unlawful activity was taking place, but as part of their efforts to interview Daoust. It further found that they looked up through the window simply to see if someone was at home. The record adequately supports these findings. *See United States v. Gerry*, 845 F.2d 34, 36 (1st Cir.1988); *United States v. Veillette*, 778 F.2d 899, 902 (1st Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). And, that being so, the conduct of the police was lawful.

■ Daoust's second argument concerns several additional guns that the police seized when they searched his house. The police saw these guns (also in plain view) while they conducted a thirty-second "protective sweep" of several rooms inside the house. Daoust points out that the search warrant referred only to the handgun, which the police knew was hanging in the kitchen. He claims that the warrant did not authorize, and there was no need for, the police to "sweep" through the additional rooms. Hence, the police had no right to be in the rooms where they saw the other guns.

The Supreme Court has recently held that the Constitution permits police officers, entering a house with an arrest warrant, to conduct a protective sweep of the house provided that the officers possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, —— U.S. ——, 110 S.Ct. 1093, 1100, 108 L.Ed.2d 276 (1990). In doing so, the Court applied to arrests in the home the same "reasonable suspicion" test that it had previously applied when police, on the street, make an on-the-spot stop and frisk for weapons. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) (reasonable suspicion required for on-the-street stop and frisk); *cf. Michigan v. Long*, 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983) (search of passenger compartment of car requires reasonable suspicion).

We assume, as does Daoust, that this same standard applies to a "protective sweep" made in conjunction with a search warrant, a proper conclusion given that the search was for an instrument of violence unlawfully possessed by the home's occupant. But, Daoust goes on to say, the police here could not reasonably have believed that they needed to sweep the house to avoid danger. In his view, the sweep rested "on a mere 'inchoate and unparticularized suspicion or 'hunch.'' " *Buie*, 110 S.Ct. at 1097 (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883).

Again the problem for Daoust is that the district court found that there was "an objective basis for a reasonable suspicion of risk to the safety of the officers." *United States v. Daoust*, 728 F.Supp. 41, 55 (D.Me.1989). And, we cannot say that "no reasonable view of the evidence supports" that determination. *Gerry*, 845 F.2d at 36; *Veillette*, 778 F.2d at 902. The officers searched the house at 7:00 a.m., a time when Daoust might have been at home sleeping, they knew that Daoust had a prior criminal history of violent behavior, they knew he owned a handgun, which he kept in a rather unusual place in the kitchen, and they knew he lived in an isolated place, far from the nearest neighbor. It was not unreasonable for them to have feared violence—for example a shot out the door or from a window—even if they had quickly taken the handgun from the kitchen and left. It seems to us that "individualized suspicion" was present.

For these reasons the judgment of the district court is

*Affirmed.*