Robert **DROHAN**, Plaintiff, Appellant,

v.

Norman **VAUGHN**, Jr. and Constance Norton, Defendants, Appellees.

No. 98–1361.

United States Court of Appeals, First Circuit.

Heard April 6, 1999.

Decided May 20, 1999.

Sherin B. Lussier, for appellant.

Carol N. Glick, with whom John G. Hines and Hines and Patz, Inc., were on brief, for appellees.

Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.

STAHL, Circuit Judge.

In this diversity action, plaintiff-appellant Robert Drohan appeals the entry of judgment against him in his negligence suit against defendants-appellees Norman Vaughn, Jr. and Constance Norton. We affirm.

## I. Background

On June 28, 1994, Drohan, a detective with the Special Investigations Bureau of the Providence Police Department, assisted in the execution of a search warrant at 10 Marcello Street, a three-story apartment building owned by Norton and maintained by her husband Vaughn. The warrant authorized a search of the first floor apartment, as well as of the persons of Louis E. Luciano and JoAnna Caraballo, two suspected drug dealers who rented the apartment.

According to Drohan, he was approximately the fourth officer to enter the premises through a side door, which led into a narrow hallway. The first floor apartment door was located off the hallway, and to the immediate left, about five feet away, was another door leading to the basement of the building. Drohan testified that the door to the basement was open, though he did not know how or when it had been opened.

The officers did a sweep of the first floor apartment, but did not find the suspects. Drohan testified that he heard a noise coming from the direction of the basement and that he followed two other detectives through the basement door and down the steps in the belief that the suspects might have been hiding down there. The steps, which were unlighted and without a handrail, had cracked treads. Drohan stated that, as he was descending the stairway, one of the steps "let go" and "lurched forward." Drohan fell and injured his leg. There was no one found in the basement.

Vaughn testified that the basement was off limits to tenants. There was no testimony indicating that Vaughn had difficulties keeping tenants out of the basement after he installed the lock on the basement door, which he did shortly after he bought the property. Although he always kept the basement door locked, he stated that he could not swear that the door was locked on that day. Upon inspection after the raid, the lock to the basement door was found broken, with the catch on the floor. There was no other damage to the door.

After a four-day trial, the court instructed the jury concerning, *inter alia*, what circumstances would constitute lawful authorization for Drohan to be in the basement. The court stated that if Drohan were not lawfully authorized to enter the basement, the jury must return a verdict for defendants, because a landowner's only duty to a trespasser is to refrain from causing him wanton or willful injury, and that there was no evidence that this injury was wanton or willful. In response to a special interrogatory, the jury found that Drohan was a trespasser, and returned a verdict for defendants.

On appeal, Drohan challenges, on several different grounds, the court's jury instructions, special interrogatory form, and refusal to admit certain evidence.

## II. Analysis

### A. *Jury Instructions*

Drohan first objects to the jury instructions regarding his authorization to be in the basement stairway. The court gave, in relevant part, the following instructions regarding Drohan's authorization:

> [T]he warrant did not authorize the Plaintiff to enter or search any other part of the building [other than the first floor apartment], nor did it authorize the Plaintiff to enter any other part of the building for the purpose of finding the two individuals named in the warrant in order to search them. If in the course of searching the first-floor apartment, the individuals had been discovered,

then the warrant would have permitted the police officers to search those individuals, but it did not authorize the police to go throughout the entire building in order to find those persons in order to search them.

However, ... notwithstanding the fact that the warrant didn't specifically authorize it, the Plaintiff would have been lawfully authorized to enter the basement stairway, if he had good reason to believe that there were individuals hiding in the basement, whose presence created a risk of harm to him or to others, and that entering the basement was necessary in order to protect against that risk of harm.

In order to establish that, the Plaintiff must point to specific facts justifying such a belief. It isn't enough for counsel to simply argue in the abstract that this kind of thing is commonly done or should be done....

Drohan argues that these instructions were erroneous in the following respects: (1) the warrant authorized Drohan to search for the suspects anywhere on the premises; (2) regardless of the scope of the warrant, Drohan had an absolute right to sweep the basement without reasonable suspicion; (3) even if a sweep of the basement required reasonable suspicion, the court's charge that Drohan had to have a "good reason" set a higher standard than reasonable suspicion; and (4) the court did not use or define the term "protective sweep" in giving this charge.

■■■ The first three objections were not raised after the jury was charged and before it retired to deliberate.[1] Fed. R.Civ.P. 51 states that "[n]o party may assign as error the giving or failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict...." *See also Putnam Resources v. Pateman,* 958 F.2d 448, 456 (1st Cir.1992) (stating that silence after jury instructions "typically constitutes a waiver of any objections" for purposes of appeal). Because Drohan did not object to the instructions, we review only for plain error. *See Moore v. Murphy,* 47 F.3d 8, 11 (1st Cir.1995). Thus, we reverse only if there is a "plain" or "obvious" error that "affect[s] substantial rights" and which has resulted in a "miscarriage of justice or has undermined the integrity of the judicial process." *Wilson v. Maritime Overseas Corp.,* 150 F.3d 1, 6–7 (1st Cir.1998). "The plain error standard, high in any event, is near its zenith in the Rule 51 milieu." *Toscano v. Chandris,* 934 F.2d 383, 385 (1st Cir.1991) (citations omitted). As there has been no showing of a miscarriage of justice or an effect upon the integrity of the judicial process, we conclude that there was no plain error.[2]

■■■ Drohan did, however, preserve his objection to the court's failure to use or define the term "protective sweep." Even if we assume *arguendo* that the instructions were erroneous in this respect, we review the alleged error under the "harmless error" rule: an error is not harmless if it "affect[s] the substantial

---

**1.** Drohan made only the following objection regarding the lawful authorization issue: "I object to, there was no definition of or explanation of the term 'protective sweep' and in regard to the case *State v. Jennings,* 461 A.2d 361 (R.I.1983) and *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)." Inasmuch as the oblique reference to *Jennings* and *Buie* may have been intended as an objection to the use of a reasonable suspicion standard, we believe that the objection was not sufficiently specific to give the court notice as to potential errors in its instructions. *See Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.,* 79 F.3d

182, 189 (1st Cir.1996) ("[T]he grounds for objection must be stated 'distinctly' after the charge to give the judge an opportunity to correct his [or her] error.").

**2.** Indeed, Drohan has provided no cases that are directly on point for any of these three challenges. *See Cambridge Plating Co., Inc. v. Napco, Inc.,* 85 F.3d 752, 768 n. 16 (1st Cir. 1996) (stating that plain error "must be 'clear under current law' ") (citing *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

rights of the parties" and is "inconsistent with substantial justice." *Scarfo v. Cabletron Sys. Inc.*, 54 F.3d 931, 939 (1st Cir. 1995) (citing Fed.R.Civ.P. 61). This circuit has held that when executing a search warrant, officers can perform a "protective sweep" of an area if there is a reasonable suspicion of risk to the safety of the officers. *See United States v. Daoust*, 916 F.2d 757, 759 (1st Cir.1990) (analogizing the situation to protective sweeps done in conjunction with arrest warrants).[3] In so holding, we reiterated that in order to conduct a protective sweep, an officer must possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* (quoting *Maryland v. Buie*, 494 U.S. 325, 337, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)).

While the district court in this case did not use the term "protective sweep," its jury instructions closely tracked the language used in *Daoust* to describe a protective sweep.[4] We see no reason why the failure to use the actual term "protective sweep" would in any way prejudice Drohan

3. Because this is a diversity case, substantive Rhode Island law applies. There are no Rhode Island cases, however, that discuss protective sweeps performed in conjunction with the execution of search warrants. Nor is there any contention that the Rhode Island Constitution affords broader protections against unreasonable searches and seizures in this context. We thus look to federal law as instructive precedent.

4. The only arguable difference between the court's instructions and the *Daoust* language is that the court used the phrase "good reason" instead of "reasonable belief" or "reasonable suspicion." While Drohan argues on appeal that this difference is dispositive, *see supra* at 21, he did not object to the use of this specific wording at trial. Therefore, he failed to object properly to the "good reason" language. *See Play Time, Inc. v. LDDS Metromedia Communications, Inc.*, 123 F.3d 23, 29 (1st Cir.1997) ("Failure to object with the requisite particularity forfeits review under the 'harmless error' rule.") (emphasis omitted).

5. Drohan did make a pre-trial "motion in limine," seeking to strike the defenses on

or affect the jury's decision making process. Therefore, the alleged error, if any, would be harmless.

### B. The Trespasser and Scope of the Warrant Defenses

Claiming that defendants based their trespasser and scope of the warrant defenses upon faulty legal theories, Drohan argues that the court should have precluded defendants from presenting these defenses. Because Drohan did not move for judgment as a matter of law, his arguments amount to a challenge of the court's decision to instruct the jury: Drohan contends that the court should never have presented these issues to the jury in its instructions and special interrogatory form. Drohan did not, however, object to the court's instructions or interrogatory form on these bases. Therefore, again, we review for plain error.[5] Drohan has not met his burden of showing that the alleged errors resulted in a miscarriage of justice. Indeed, Drohan has not even demonstrated that there were any clear or obvious errors.[6] Accordingly, we find no plain er-

these grounds, but the motion was insufficient to preserve his objections on appeal. *Cf. Eastern Mountain Platform Tennis, Inc. v. Sherwin–Williams Co., Inc.*, 40 F.3d 492, 497 (1st Cir.1994) (stating that after the denial of a summary judgment motion, the moving party must make a motion for judgment as a matter of law at the close of the evidence in order to preserve the issue for review); *Wilson*, 150 F.3d at 6 ("[I]t is an ironclad rule in this circuit that failure to renew objections *after* the charge constitutes waiver of any claim of error.").

6. Once again, Drohan provides no cases that are directly on point. He argues that a police officer acting in the course of his duties can never be a trespasser, but fails to provide any cases that extend such protection to officers who are arguably exceeding the scope of their duties. Similarly, he argues that because defendants were not the targets of the search warrant, they have no standing to challenge a Fourth Amendment violation resulting from the execution of the warrant. Drohan can point to no civil case, however, where a landlord is precluded from using a search warrant

ror in the presentation of these defenses to the jury.

## C.  Special Interrogatory Form

■ Drohan contends that the special interrogatory form improperly asked the jury to reach a legal conclusion as to Drohan's authorization to enter the basement. Drohan argues that the court should instead have asked the jury to determine the existence of "duty triggering facts" (such as whether the basement door was open), and then decided as a matter of law the ultimate issue of whether Drohan was a trespasser.

The form read, in pertinent part:

Question 1. When the plaintiff entered the stairway leading to the basement was he:

_____ A lawful entrant who was authorized to enter the stairway or

_____ A trespasser who was not authorized to enter the stairway?

If your answer is that he was a trespasser, do not answer any further questions and return a verdict in favor of the defendants.

When asked if he had any objections to this form, Drohan's counsel stated: "Yes. The only question we had was the separation of the status as to whether or not the Officer was a trespasser being separated from the other issues in the case.... We would object to the separation of question number one from other general issues in the case."  Because Drohan did not object to the status question being decided by the jury or to the wording of the question, we review the special interrogatory for plain error only.  See Phav v. Trueblood, Inc., 915 F.2d 764, 769 (1st Cir.1990) (Rule 51 applies to special interrogatories as well as to verbal instructions).  As there was sufficient evidence to support the jury's decision, any error in having the jury, rather

than the court, decide the trespasser issue is hardly a "miscarriage of justice" or a violation of "the integrity of the judicial process."  Wilson, 150 F.3d at 6–7.  We therefore decline to find plain error.[7]

## D.  Testimony Regarding the Protective Sweep

■ Drohan complains that he was not permitted, on direct examination, to testify as to his subjective understanding of the purpose of a protective sweep.  We review the exclusion of evidence for abuse of discretion.  See Bates v. Shearson Lehman Bros., Inc., 42 F.3d 79, 83 (1st Cir. 1994).  We are not convinced that Drohan's testimony would have been relevant to the jury's deliberation.  Drohan's subjective understanding of his authority to search the cellar has little correlation to his actual authority.  Therefore, we find no abuse of discretion in excluding this testimony.

## E.  Housing Codes Evidence

■ Drohan argues that, even given a finding that he was a trespasser, he still could have been the subject of wanton or willful injury, and therefore entitled to relief.  He contends that the court improperly excluded the evidence that would have shown that defendants' behavior was wanton or willful.  We review the exclusion of this evidence for abuse of discretion.  See id.

To bolster his contention that the injury was wanton or willful, Drohan sought to introduce information about three housing codes—the Rhode Island State Building Code (the "State Building Code"), the Rhode Island Housing Maintenance and Occupancy Code (the "Occupancy Code"), and the Providence Minimum Standards Housing Ordinance (the "Providence

---

to show that an officer exceeded authorization and was trespassing on his property.

7.  In discussing the interrogatory, Drohan also repeats the same objections that he made to

the verbal jury instructions.  We have already considered and rejected these objections.  See supra at 21.

Housing Ordinance")—into evidence. More importantly, he sought on direct examination to question Vaughn about his knowledge of these codes and whether he knowingly violated them. Drohan claims that if he could have shown that Vaughn knowingly violated the codes, Vaughn's behavior could have been construed as wanton or willful.

Even if Drohan could have shown a violation of the codes, we doubt that such a violation, standing alone, would be enough to show wanton or willful injury. But, at any rate, the district court's determination that the codes were inapplicable to the basement of the 10 Marcello Street building is amply supported by the evidence.

The State Building Code is only applicable to structures built after 1977, *see* R.I. Gen. Laws § 23–27.3–105.1, or to buildings which have been significantly altered since 1977, *see id.* at § 23–27.3–106.1—106.4. Drohan claims that the post–1977 conversion of the building from a two-apartment to a three-apartment building qualified the building under this statute. He suggests that any "change in use" to a property makes the building subject to the code, citing section 23–27.3–105.2. He misreads section 23–27.3–105.2, which only states that *if* a change in use makes the building subject to the code, certain procedures must be followed. *See id.* at § 23–27.3–105.2 ("It shall be unlawful to make any change in the use or occupancy of any structure or part thereof *which would subject it to provision of this code* without the approval of the building officials ....") (emphasis added). Sections 23–27.3–106.1—106.4 dictate when a change makes a building subject to the code, and those sections distinctly state that an alteration must cost a certain percentage of the building's value in order to trigger the code's requirements for new structures. *See, e.g., id.* at § 23–27.3–106.1 (applying the code's requirements to any·building in which alterations in excess of fifty percent of the physical value of the building have been made). Drohan provided no evidence that the alterations to the Marcello Street building cost a significant enough percentage of the building's value to trigger the State Building Code's requirements.

▇ Although the Occupancy Code does apply to buildings erected before 1977, its provisions only relate to the portions of a building used or intended to be used for the purposes of a dwelling. *See id.* at § 45–24.3–4 ("Applicability.—(a) Every portion of a building or its premises used or intended to be used for the purpose of dwelling, living, eating, sleeping, or cooking therein, or occupancy, shall comply with the provisions of this chapter....").  The Occupancy Code defines "dwelling" as "any enclosed space which is wholly or partly used or intended to be used for living or sleeping by human occupants...." *Id.* at § 45–24.3–5. Because the basement, which was off limits to tenants, does not fit the definition of a dwelling space, the Occupancy Code is inapplicable.

▇ Finally, the Providence Housing Ordinance applies to all buildings, irrespective of when they were built. Drohan claims that defendants violated section 13–155 of this code. *See* Providence, R.I., Code of Municipal Ordinances, ch. 13, § 155 (requiring proper lighting for common stairways). Section 13–155, however, only applies to "common stairways." *See id.* The Rhode Island Supreme Court has defined a common area, in another context, as a portion of the premises which is controlled by the landlord and used in common by the tenants. *See Gormley v. Vartian,* 121 R.I. 770, 403 A.2d 256, 261 (1979) (discussing a landlord's duty to maintain common areas). In this case, the basement stairway was not used in common by the tenants, and therefore is not governed by section 13–155. Similarly, Drohan's claim that section 13–185 of the Providence Housing Ordinance applies to the basement stairway is also incorrect. *See* Providence, R.I., Code of Municipal Ordinances, ch. 13, § 185 (stating that every stairway shall be kept in good repair). Section 13–

185 is a section of Article IX, which applies only to dwellings or dwelling units. *See id.* at ch. 13, § 182 ("Compliance with article required. No person shall occupy as owner-occupant or permit to be occupied by another, any dwelling or dwelling unit which does not comply with the following requirements of this article."). The Providence Housing Ordinance defines "dwelling" as "any building or part thereof which is wholly or partly used or intended to be used for living and sleeping by one or more occupants" and "dwelling unit" as "any room or group of rooms within a dwelling and forming a single and separate habitable unit." *Id.* at ch. 13, § 1. Thus, section 13–185 appears to be inapplicable to a non-dwelling space such as the basement in question.

Because none of the building codes applies to the basement of the Marcello Street property, the court did not abuse its discretion in excluding evidence related to the codes.[8]

### III.   Conclusion

We have considered and rejected Drohan's remaining arguments, which we find to be entirely unpersuasive.

For the reasons set forth above, we affirm the judgment of the district court.

*Affirmed.* **Costs to appellees.**

---

8.   For the same reason, the court's failure to instruct the jury on the housing codes was not an abuse of discretion.