USCA1 Opinion

 

 United States Court of Appeals For the First Circuit
No. 98-1361 ROBERT DROHAN, Plaintiff, Appellant, v. NORMAN VAUGHN, JR. AND CONSTANCE NORTON, Defendants, Appellees. APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] Before Torruella, Chief Judge, Boudin and Stahl, Circuit Judges. Sherin B. Lussier for appellant. Carol N. Glick, with whom John G. Hines and Hines and Patz,
Inc., were on brief, for appellees.
May 20, 1999 STAHL, Circuit Judge. In this diversity action,
plaintiff-appellant Robert Drohan appeals the entry of judgment
against him in his negligence suit against defendants-appellees
Norman Vaughn, Jr. and Constance Norton. We affirm. I. Background On June 28, 1994, Drohan, a detective with the Special
Investigations Bureau of the Providence Police Department, assisted
in the execution of a search warrant at 10 Marcello Street, a
three-story apartment building owned by Norton and maintained by
her husband Vaughn. The warrant authorized a search of the first
floor apartment, as well as of the persons of Louis E. Luciano and
JoAnna Caraballo, two suspected drug dealers who rented the
apartment. According to Drohan, he was approximately the fourth
officer to enter the premises through a side door, which led into
a narrow hallway. The first floor apartment door was located off
the hallway, and to the immediate left, about five feet away, was
another door leading to the basement of the building. Drohan
testified that the door to the basement was open, though he did not
know how or when it had been opened. The officers did a sweep of the first floor apartment,
but did not find the suspects. Drohan testified that he heard a
noise coming from the direction of the basement and that he
followed two other detectives through the basement door and down
the steps in the belief that the suspects might have been hiding
down there. The steps, which were unlighted and without a
handrail, had cracked treads. Drohan stated that, as he was
descending the stairway, one of the steps "let go" and "lurched
forward." Drohan fell and injured his leg. There was no one found
in the basement. Vaughn testified that the basement was off limits to
tenants. There was no testimony indicating that Vaughn had
difficulties keeping tenants out of the basement after he installed
the lock on the basement door, which he did shortly after he bought
the property. Although he always kept the basement door locked, he
stated that he could not swear that the door was locked on that
day. Upon inspection after the raid, the lock to the basement door
was found broken, with the catch on the floor. There was no other
damage to the door. After a four-day trial, the court instructed the jury
concerning, inter alia, what circumstances would constitute lawful
authorization for Drohan to be in the basement. The court stated
that if Drohan were not lawfully authorized to enter the basement,
the jury must return a verdict for defendants, because a
landowner's only duty to a trespasser is to refrain from causing
him wanton or willful injury, and that there was no evidence that
this injury was wanton or willful. In response to a special
interrogatory, the jury found that Drohan was a trespasser, and
returned a verdict for defendants. On appeal, Drohan challenges, on several different
grounds, the court's jury instructions, special interrogatory form,
and refusal to admit certain evidence. II. Analysis
A. Jury Instructions Drohan first objects to the jury instructions regarding
his authorization to be in the basement stairway. The court gave,
in relevant part, the following instructions regarding Drohan's
authorization: [T]he warrant did not authorize the Plaintiff to enter or search any other part of the building [other than the first floor apartment], nor did it authorize the Plaintiff to enter any other part of the building for the purpose of finding the two individuals named in the warrant in order to search them. If in the course of searching the first-floor apartment, the individuals had been discovered, then the warrant would have permitted the police officers to search those individuals, but it did not authorize the police to go throughout the entire building in order to find those persons in order to search them. However, . . . notwithstanding the fact that the warrant didn't specifically authorize it, the Plaintiff would have been lawfully authorized to enter the basement stairway, if he had good reason to believe that there were individuals hiding in the basement, whose presence created a risk of harm to him or to others, and that entering the basement was necessary in order to protect against that risk of harm. In order to establish that, the Plaintiff must point to specific facts justifying such a belief. It isn't enough for counsel to simply argue in the abstract that this kind of thing is commonly done or should be done . . . . Drohan argues that these instructions were erroneous in
the following respects: (1) the warrant authorized Drohan to search
for the suspects anywhere on the premises; (2) regardless of the
scope of the warrant, Drohan had an absolute right to sweep the
basement without reasonable suspicion; (3) even if a sweep of the
basement required reasonable suspicion, the court's charge that
Drohan had to have a "good reason" set a higher standard than
reasonable suspicion; and (4) the court did not use or define the
term "protective sweep" in giving this charge. The first three objections were not raised after the jury
was charged and before it retired to deliberate. Fed. R. Civ. P.
51 states that "[n]o party may assign as error the giving or
failure to give an instruction unless that party objects thereto
before the jury retires to consider its verdict . . . ." See also
Putnam Resources v. Pateman, 958 F.2d 448, 456 (1st Cir. 1992)
(stating that silence after jury instructions "typically
constitutes a waiver of any objections" for purposes of appeal). Because Drohan did not object to the instructions, we review only
for plain error. See Moore v. Murphy, 47 F.3d 8, 11 (1st Cir.
1995). Thus, we reverse only if there is a "plain" or "obvious"
error that "affect[s] substantial rights" and which has resulted in
a "miscarriage of justice or has undermined the integrity of the
judicial process." Wilson v. Maritime Overseas Corp., 150 F.3d 1,
6-7 (1st Cir. 1998). "The plain error standard, high in any
event, is near its zenith in the Rule 51 milieu." Toscano v.
Chandris, 934 F.2d 383, 385 (1st Cir. 1991) (citations omitted). As there has been no showing of a miscarriage of justice or an
effect upon the integrity of the judicial process, we conclude that
there was no plain error. Drohan did, however, preserve his objection to the
court's failure to use or define the term "protective sweep." Even if we assume arguendo that the instructions were erroneous in
this respect, we review the alleged error under the "harmless
error" rule: an error is not harmless if it "affect[s] the
substantial rights of the parties" and is "inconsistent with
substantial justice." Scarfo v. Cabletron Sys. Inc., 54 F.3d 931,
939 (1st Cir. 1995) (citing Fed. R. Civ. P. 61). This circuit has
held that when executing a search warrant, officers can perform a
"protective sweep" of an area if there is a reasonable suspicion of
risk to the safety of the officers. See United States v. Daoust,
916 F.2d 757, 759 (1st Cir. 1990) (analogizing the situation to
protective sweeps done in conjunction with arrest warrants). In
so holding, we reiterated that in order to conduct a protective
sweep, an officer must possess "a reasonable belief based on
specific and articulable facts that the area to be swept harbors an
individual posing a danger to those on the arrest scene." Id.
(quoting Maryland v. Buie, 494 U.S. 325, 337 (1990)). While the district court in this case did not use the
term "protective sweep," its jury instructions closely tracked the
language used in Daoust to describe a protective sweep. We see no
reason why the failure to use the actual term "protective sweep"
would in any way prejudice Drohan or affect the jury's decision making process. Therefore, the alleged error, if any, would be
harmless.
B. The Trespasser and Scope of the Warrant Defenses Claiming that defendants based their trespasser and scope
of the warrant defenses upon faulty legal theories, Drohan argues
that the court should have precluded defendants from presenting
these defenses. Because Drohan did not move for judgment as a
matter of law, his arguments amount to a challenge of the court's
decision to instruct the jury: Drohan contends that the court
should never have presented these issues to the jury in its
instructions and special interrogatory form. Drohan did not,
however, object to the court's instructions or interrogatory form
on these bases. Therefore, again, we review for plain error. Drohan has not met his burden of showing that the alleged errors
resulted in a miscarriage of justice. Indeed, Drohan has not even
demonstrated that there were any clear or obvious errors. Accordingly, we find no plain error in the presentation of these
defenses to the jury.
C. Special Interrogatory Form Drohan contends that the special interrogatory form
improperly asked the jury to reach a legal conclusion as to
Drohan's authorization to enter the basement. Drohan argues that
the court should instead have asked the jury to determine the
existence of "duty triggering facts" (such as whether the basement
door was open), and then decided as a matter of law the ultimate
issue of whether Drohan was a trespasser. The form read, in pertinent part: Question 1. When the plaintiff entered the stairway leading to the basement was he: _____ A lawful entrant who was authorized to enter the stairway or _____ A trespasser who was not authorized to enter the stairway? If your answer is that he was a trespasser, do not answer any further questions and return a verdict in favor of the defendants. When asked if he had any objections to this form,
Drohan's counsel stated: "Yes. The only question we had was the
separation of the status as to whether or not the Officer was a
trespasser being separated from the other issues in the
case . . . . We would object to the separation of question number
one from other general issues in the case." Because Drohan did not
object to the status question being decided by the jury or to the
wording of the question, we review the special interrogatory for
plain error only. See Phav v. Trueblood, Inc., 915 F.2d 764, 769
(1st Cir. 1990) (Rule 51 applies to special interrogatories as well
as to verbal instructions). As there was sufficient evidence to
support the jury's decision, any error in having the jury, rather
than the court, decide the trespasser issue is hardly a
"miscarriage of justice" or a violation of "the integrity of the
judicial process." Wilson, 150 F.3d at 6-7. We therefore decline
to find plain error. D. Testimony Regarding the Protective Sweep Drohan complains that he was not permitted, on direct
examination, to testify as to his subjective understanding of the
purpose of a protective sweep. We review the exclusion of evidence
for abuse of discretion. See Bates v. Shearson Lehman Bros., Inc.,
42 F.3d 79, 83 (1st Cir. 1994). We are not convinced that Drohan's
testimony would have been relevant to the jury's deliberation. Drohan's subjective understanding of his authority to search the
cellar has little correlation to his actual authority. Therefore,
we find no abuse of discretion in excluding this testimony.
E. Housing Codes Evidence Drohan argues that, even given a finding that he was a
trespasser, he still could have been the subject of wanton or
willful injury, and therefore entitled to relief. He contends that
the court improperly excluded the evidence that would have shown
that defendants' behavior was wanton or willful. We review the
exclusion of this evidence for abuse of discretion. See id. To bolster his contention that the injury was wanton or
willful, Drohan sought to introduce information about three housing
codes -- the Rhode Island State Building Code (the "State Building
Code"), the Rhode Island Housing Maintenance and Occupancy Code
(the "Occupancy Code"), and the Providence Minimum Standards
Housing Ordinance (the "Providence Housing Ordinance") -- into
evidence. More importantly, he sought on direct examination to
question Vaughn about his knowledge of these codes and whether he
knowingly violated them. Drohan claims that if he could have shown
that Vaughn knowingly violated the codes, Vaughn's behavior could
have been construed as wanton or willful. Even if Drohan could have shown a violation of the codes,
we doubt that such a violation, standing alone, would be enough to
show wanton or willful injury. But, at any rate, the district
court's determination that the codes were inapplicable to the
basement of the 10 Marcello Street building is amply supported by
the evidence. The State Building Code is only applicable to structures
built after 1977, see R.I. Gen. Laws 23-27.3-105.1, or to
buildings which have been significantly altered since 1977, see id.
at 23-27.3-106.1 - 106.4. Drohan claims that the post-1977
conversion of the building from a two-apartment to a three-
apartment building qualified the building under this statute. He
suggests that any "change in use" to a property makes the building
subject to the code, citing section 23-27.3-105.2. He misreads
section 23-27.3-105.2, which only states that if a change in use
makes the building subject to the code, certain procedures must be
followed. See id. at 23-27.3-105.2 ("It shall be unlawful to
make any change in the use or occupancy of any structure or part
thereof which would subject it to provision of this code without
the approval of the building officials . . . .") (emphasis added). Sections 23-27.3-106.1 - 106.4 dictate when a change makes a
building subject to the code, and those sections distinctly state
that an alteration must cost a certain percentage of the building's
value in order to trigger the code's requirements for new
structures. See, e.g., id. at 23-27.3-106.1 (applying the code's
requirements to any building in which alterations in excess of
fifty percent of the physical value of the building have been
made). Drohan provided no evidence that the alterations to the
Marcello Street building cost a significant enough percentage of
the building's value to trigger the State Building Code's
requirements. Although the Occupancy Code does apply to buildings
erected before 1977, its provisions only relate to the portions of
a building used or intended to be used for the purposes of a
dwelling. See id. at 45-24.3-4 ("Applicability. -- (a) Every
portion of a building or its premises used or intended to be used
for the purpose of dwelling, living, eating, sleeping, or cooking
therein, or occupancy, shall comply with the provisions of this
chapter . . . ."). The Occupancy Code defines "dwelling" as "any
enclosed space which is wholly or partly used or intended to be
used for living or sleeping by human occupants . . . ." Id. at 45-24.3-5. Because the basement, which was off limits to
tenants, does not fit the definition of a dwelling space, the
Occupancy Code is inapplicable. Finally, the Providence Housing Ordinance applies to all
buildings, irrespective of when they were built. Drohan claims
that defendants violated section 13-155 of this code. See
Providence, R.I., Code of Municipal Ordinances, ch. 13, 155
(requiring proper lighting for common stairways). Section 13-155,
however, only applies to "common stairways." See id. The Rhode
Island Supreme Court has defined a common area, in another context,
as a portion of the premises which is controlled by the landlord
and used in common by the tenants. See Gormley v. Vartian, 403
A.2d 256, 261 (R.I. 1979) (discussing a landlord's duty to maintain
common areas). In this case, the basement stairway was not used in
common by the tenants, and therefore is not governed by section 13-
155. Similarly, Drohan's claim that section 13-185 of the
Providence Housing Ordinance applies to the basement stairway is
also incorrect. See Providence, R.I., Code of Municipal
Ordinances, ch. 13, 185 (stating that every stairway shall be
kept in good repair). Section 13-185 is a section of Article IX,
which applies only to dwellings or dwelling units. See id. at ch.
13, 182 ("Compliance with article required. No person shall
occupy as owner-occupant or permit to be occupied by another, any
dwelling or dwelling unit which does not comply with the following
requirements of this article."). The Providence Housing Ordinance
defines "dwelling" as "any building or part thereof which is wholly
or partly used or intended to be used for living and sleeping by
one or more occupants" and "dwelling unit" as "any room or group of
rooms within a dwelling and forming a single and separate habitable
unit." Id. at ch. 13, 1. Thus, section 13-185 appears to be
inapplicable to a non-dwelling space such as the basement in
question. Because none of the building codes applies to the
basement of the Marcello Street property, the court did not abuse
its discretion in excluding evidence related to the codes. III. Conclusion We have considered and rejected Drohan's remaining
arguments, which we find to be entirely unpersuasive. For the reasons set forth above, we affirm the judgment
of the district court. Affirmed. Costs to appellees.