STATE of Maine

v.

Kathryn STORER and Ralph Storer.

Supreme Judicial Court of Maine.

Argued Nov. 1, 1990.

Decided Nov. 30, 1990.

Garry Greene (orally), Asst. Atty. Gen., Augusta, James E. Diehl, Asst. Dist. Atty., Dover–Foxcroft, for plaintiff.

Marshall A. Stern, Nancy White (orally), Bangor, for defendants.

Before McKUSICK, C.J., and GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

McKUSICK, Chief Justice.

The State appeals from the order of the Superior Court (Piscataquis County, *Smith, J.*) suppressing evidence seized near and within the Guilford home of defendants Kathryn and Ralph Storer and dismissing a charge of obstructing government administration against Mrs. Storer. The court held that the seizure by a game warden of a bag containing jars of marijuana from behind the Storers' house violated the Fourth and Fourteenth Amendments. The illegality of that seizure, concluded the court, required the suppression not only of that evidence but also of additional marijuana and related paraphernalia found while the police executed a warrant for the search of the Storers' house because the illegal seizure had been one basis for probable cause supporting the issuance of the warrant. By its order, the court further held that the police acted unreasonably by preventing the Storers from reentering their home pending the issuance of a warrant for its search and that accordingly Mrs. Storer could not be convicted of obstructing government administration for her trying to push by a game warden and an officer to gain entrance. On the State's appeal, we vacate the order in all respects.

On November 1, 1989, the Department of Inland Fisheries and Wildlife received an anonymous tip that Ralph Storer had a "jacked" deer in the cellar of his house in Guilford. The next day the three wardens who were assigned to investigate the tip devised a surveillance plan. They decided that one of them would watch the Storers' house while someone placed an anonymous call to warn the Storers that the wardens were coming and to urge them to get rid of any deer meat. The wardens hoped that they would see one of the Storers bring deer parts outside to hide or dispose of them.

At about 8:15 p.m. on November 2, the three wardens drove to the area of Guilford where the Storers live. The Storers' house fronts on Glass Hill Road, approximately 50 yards from its intersection with Route 150, the so-called North Guilford Road. The wardens drove north on Route 150 about 400–500 yards past the Glass Hill Road intersection and dropped Warden Annis off. Annis crossed a tree line that ran along Route 150, walked into a mowed field of some 300 acres, and made his way toward the back of the Storers' house. Approximately 100 yards from the house he stepped back into the tree line, sat down, and watched the house with his binoculars.

Meanwhile, the other two wardens made a radio call to a fourth warden, whose wife placed the anonymous warning phone call to the Storers. After waiting in the tree line for 15 to 20 minutes, Warden Annis saw the cellar light switch on. He watched Kathryn Storer, whom he recognized, come out of the cellar door. He saw her approach a chicken or rabbit pen about 40 yards in back of the house and drop a bag to the ground.[1] Mrs. Storer then returned to the cellar and turned off the light. About three minutes later, Warden Annis saw Mrs. Storer go out the front door of her house, cross Glass Hill Road, and throw a second bag into the woods.[2]

Unaware of what Warden Annis had seen, his two colleagues pulled into the Storers' driveway. They went to the front porch, knocked on the door, and asked Mrs. Storer if they could speak with her husband. She told him that he was not home,

---

1. For convenience of identification, we will refer to the first bag deposited in back of the Storers' house as Bag 1.

2. For the same reason, we will refer to the bag deposited across the road from the Storers' house as Bag 2.

that she had just gotten a call that game wardens were coming with a search warrant, and that she would not say anything until her husband returned. After seeing the wardens leave the front porch, Warden Annis went to Bag 1. When he picked it up, several canning jars containing almost one and three-quarter pounds of marijuana fell out. Warden Annis walked out from behind the house and brought Bag 1 to the wardens in the front who were waiting for Mr. Storer. The wardens decided to call the sheriff's department for assistance.

Within minutes Investigator Bickford arrived. Warden Annis told Bickford what he had seen from the back of the house, described Bag 1 and its contents, and went across the road with Bickford to get Bag 2. That bag also contained marijuana, about one and one-quarter pounds. As soon as Mr. Storer returned home, one of the wardens asked him about the deer, read him his Miranda rights, and told him that they had found marijuana. When Mr. Storer would not consent to a search of the house, he was told that a warrant would be obtained. The Storers left the house in their truck. Before Investigator Bickford and Warden Annis left to get the warrant, Investigator Bickford told the police officer and game wardens who were to remain there to secure the premises and to keep the Storers from going inside if they returned.

Mrs. Storer did come back to the house before Investigator Bickford and Warden Annis returned with the warrant. In an attempt to get inside, she tried to push her way past an officer and a warden who were standing on her porch blocking the front door. Unable to get past them, Mrs.

Storer then tried to get into the house through a cellar window. She was immediately arrested.

When Investigator Bickford returned with a warrant, the wardens and police officers searched the house. Inside they found five and one-half pounds of marijuana, plant clippers, and a supply of clear sandwich bags and rubber bands. Both Mr. and Mrs. Storer were indicted for unlawful trafficking in scheduled drugs in violation of 17–A M.R.S.A. § 1103 (Class C) (1983 & Supp.1990).[3] Mrs. Storer was also charged with obstructing government administration in violation of 17–A M.R.S.A. § 751 (1983).[4]

### I.

### *The Suppression of Evidence*

■ Raising their challenge to the conduct of the police and wardens only under the United States Constitution, defendants moved to suppress the marijuana found in Bag 1, the marijuana found in Bag 2, and the marijuana and drug paraphernalia found in the house. The Superior Court suppressed the marijuana in Bag 1, finding that Warden Annis was within the curtilage of the Storers' home when he seized it without a warrant. The court also suppressed the evidence found during the search of the Storers' house, concluding that the warrant was "tainted by the unlawful seizure of the marijuana found [in Bag 1] within the [Storers'] curtilage." The court did not, however, suppress the marijuana that Warden Annis and Investigator Bickford found in Bag 2 across the road from the Storers' house, holding that

**3.** The relevant portions of 17–A M.R.S.A. § 1103 read:

 1. A person is guilty of unlawful trafficking in a scheduled drug if he intentionally or knowingly traffics in what he knows or believes to be any scheduled drug, and which is, in fact, a scheduled drug....
 2. Violation of this section is:

 . . . . .

 B. A Class C crime if the drug ... is marijuana in a quantity of more than 2 pounds....
 3. A person is presumed to be unlawfully trafficking in scheduled drugs if the person

intentionally or knowingly possesses any scheduled drug that is, in fact:
 A. More than 2 pounds of marijuana....
Since the Storers were indicted, the statute has been amended in parts not relevant to this appeal.

**4.** The pertinent part of 17–A M.R.S.A. § 751 reads:
 1. A person is guilty of obstructing government administration if he uses force, violence, intimidation or engages in any criminal act with the intent to interfere with a public servant performing or purporting to perform an official function.

the Storers had no reasonable expectation of privacy in that area and that "the discovery and seizure of this bag was not dependent on the seizure of the first bag."

### A. The Validity of the Search Warrant

We turn first to the Superior Court's suppression of the evidence seized in the Storers' house pursuant to the search warrant. In this application of the exclusionary rule, the court suppressed as the "fruits of the poisonous tree" evidence that the police and wardens had obtained as a result of an illegal seizure of Bag 1. *See Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963). The rationale for extending the exclusionary rule to this type of evidence is to deter police from furthering an investigation by engaging in illegal conduct. *See Nix v. Williams*, 467 U.S. 431, 442–43, 104 S.Ct. 2501, 2508–09, 81 L.Ed.2d 377 (1984). On the other hand, "[w]hen the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation." *Id.* at 443, 104 S.Ct. at 2509. Consequently, the independent source exception to the exclusionary rule "allows admission of evidence which was gained through an independent source as well as the tainted source." *United States v. Silvestri*, 787 F.2d 736, 740 (1st Cir.1986), *cert. denied*, 487 U.S. 1233, 108 S.Ct. 2897, 101 L.Ed.2d 931 (1988); *see also Murray v. United States*, 487 U.S. 533, 537, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988); *United States v. Moscatiello*, 771 F.2d 589, 602–04 (1st Cir.1985), *vacated on other grounds*, 476 U.S. 1138, 106 S.Ct. 2241, 90 L.Ed.2d 688 (1986).

Because the police's discovery of the marijuana in Bag 2 did not result from the illegal seizure of Bag 1 and it thus provided an independent basis for the search warrant, the independent source exception to the exclusionary rule applies to the evidence obtained during the search of the Storers' house. Probable cause for issuing the search warrant was based in part on the marijuana found in Bag 1 and in part

on the marijuana found in Bag 2. The Superior Court found that Mrs. Storer had thrown Bag 2 outside the Storers' curtilage and that it had been legally retrieved by Warden Annis and Investigator Bickford. In this situation the court should have excised from the affidavit used to obtain the warrant all the information it believed had been illegally obtained and then should have determined whether the magistrate would have had probable cause to issue the warrant relying solely on the remaining information. *See United States v. Veillette*, 778 F.2d 899, 903–04 (1st Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). Upon doing so, one readily concludes that Bag 1 was unnecessary to the probable cause showing and that the warrant would have issued even if Bag 1 had not been seized. The indisputably legal seizure of Bag 2 provided the magistrate with ample grounds to issue the search warrant and constituted an independent source for the evidence found in the house during the search pursuant to the warrant.

### B. The First Bag of Marijuana (Bag 1)

 In its challenge to the suppression of Bag 1, the State argues that the Superior Court committed clear error in finding that Warden Annis seized that bag from within the curtilage of the Storers' house. Because the search warrant in any event would not be invalidated by the illegality of the seizure of Bag 1, we need not review the court's factual finding of the extent of the Storers' curtilage. Instead, the dispositive question is whether Bag 1 should be admitted "on the ground that it would ultimately or inevitably have been discovered even if no violation of any consitutional . . . provision had taken place." *Nix v. Williams*, 467 U.S. at 434, 104 S.Ct. at 2504. The inevitable discovery exception to the exclusionary rule derives from the independent source doctrine, "but it differs in that the question is not whether the police did in fact acquire certain evidence by reliance upon an untainted source but instead whether evidence found because of a Fourth Amendment violation would inevita-

bly have been discovered lawfully." 4 W. LaFave, *Search & Seizure* § 11.4(a), at 378 (2d ed. 1987); *see also Murray v. United States*, 487 U.S. at 539, 108 S.Ct. at 2534 ("[t]he inevitable discovery doctrine … is in reality an extrapolation from the independent source doctrine: *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered" (emphasis in original)). The purpose of the two exceptions to the exclusionary rule are exactly the same: to prevent an earlier act that violated a constitutional right from undermining an investigation based on other, legal sources of information. *See Nix v. Williams*, 467 U.S. at 444, 104 S.Ct. at 2509. In order for the inevitable discovery exception to apply, the prosecution must establish "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Id.;* *see also Murray v. United States*, 487 U.S. at 543, 108 S.Ct. at 2536.

The record compels a finding that the State has made that showing. Even if Warden Annis could not have legally seized Bag 1 without a warrant, he did nothing illegal in watching Mrs. Storer from a position plainly outside the curtilage and seeing her deposit Bag 1 away from the house. *See United States v. Dunn*, 480 U.S. 294, 304, 107 S.Ct. 1134, 1141, 94 L.Ed.2d 326 (1987). With that observation and the knowledge that Bag 2 containing marijuana was thrown minutes later into the woods across the road from the front of the house, the officers conducting the search would have gone directly to Bag 1 once they had the warrant in hand. The warrant authorized them to search the Storers' entire premises, including their "outbuildings and curtilage."

## II.

### Pretrial Dismissal of the Indictment

■ Kathryn Storer's indictment for obstructing government administration read that "on or about the second day of November, 1989, … [she] did use force, violence, intimidation or engage in a criminal act, with the intent to interfere with public servants, … who were in the performance of an official function." In her motion to dismiss the charge, Mrs. Storer alleged that she was not interfering with police functions because the seizure of her house was illegal. She also alleged that she had not used force against the officers but that if she had, she was privileged to defend her property. The court granted her motion on the ground that "[t]he procedure employed by the officers in excluding Mrs. Storer from her residence went beyond the State's need to prevent the destruction or removal of evidence. The officers acted without lawful authority."

■ We agree with the State that the court erred in dismissing the indictment. The Superior Court may not conduct a pretrial hearing on the facts underlying the offense charged in an indictment; an indictment is subject to dismissal for failure to state an offense only when the facts alleged on its face fail to make out an offense against the State.

Although Mrs. Storer's motion to dismiss does not specify a particular rule of criminal procedure, her pretrial challenge to the indictment can draw its procedural legitimacy only from M.R.Crim.P. 12, the rule governing pleadings and motions before trial. Rule 12, and the Federal Rule of Criminal Procedure on which it is modeled, "abolish archaic procedural forms of raising defenses and objections to the indictment, and … allow these defenses to be by an appropriate motion." *State v. Perkins*, 275 A.2d 586, 588 (Me.1971). In place of the common law pleadings, Rule 12(a) requires a defendant seeking pretrial rulings to file a "motion to dismiss or to grant appropriate relief."

The types of defenses that may be raised under Rule 12 fall into two categories. "Rule 12(b)(2) reaches defects in the process which must be raised by appropriate motion, or be considered waived. Rule 12(b)(1) is applicable to defenses capable of determination without a trial of the general issue, but which are not waived by failure to raise the issue prior to trial." *State v. Perkins*, 275 A.2d at 587–88. One of the

defenses that falls into the latter category is "the failure of a charging document to charge an offense." 1 Cluchey & Seitzinger, *Maine Criminal Practice* § 12.3, at 12–9 (1990). "A criminal complaint lacking any of the essential elements of the crime intended to be charged cannot confer jurisdiction upon the court to try an accused and no lawful sentence can be imposed thereunder." *State v. Scott*, 317 A.2d 3, 5 (Me.1974). The historical reason for requiring the indictment to specify an offense stems from the lack of trial records in England:

> If the charging instrument was virtually the entire record and it was impossible for the reviewing court to determine what the evidence was, it is not surprising that courts might have feared that no evidence had been introduced in support of an element that the indictment failed to state.

Ballou, *"Jurisdictional" Indictments, Informations and Complaints: An Unnecessary Doctrine*, 29 Me.L.Rev. 1, 11 n. 69 (1977). The modern purpose of the requirement is to allow the defendant to prepare a defense in light of the charges that are brought by the State. *See id.*

In the case at bar, the Superior Court did more than examine the legal question whether the indictment's language adequately charged the crime of obstructing government administration; it analyzed the evidence presented at the suppression hearing to determine if that evidence was sufficient to support a conviction for that offense. Neither the Maine nor the federal rules provide any authority for such a procedure. *Cf. State v. Lagasse*, 410 A.2d 537, 540 (Me.1980) ("[a] pretrial motion addressed to the sufficiency of the evidence to support the indictment is unknown to our criminal procedure"); *see also United States v. Gallagher*, 602 F.2d 1139, 1142 (3d Cir.1979), *cert. denied*, 444 U.S. 1043, 100 S.Ct. 729, 62 L.Ed.2d 728 (1980).

██ Even if the officers acted unlawfully in seizing the Storers' house, an issue we need not resolve here, "[t]he legality of the arrest for obstructing government administration does not turn upon either the legality of the order ... or [the officers'] knowledge of the legality of that order." *State v. Judkins*, 440 A.2d 355, 359 (Me.1982). Mrs. Storer had an obligation to obey even the unlawful commands of the police, at least if issued in a good faith belief in their lawfulness. *Id.; cf. State v. Austin*, 381 A.2d 652, 655 (Me.1978) ("under the [criminal] code a person being arrested must not respond violently" to an officer's use of non-deadly force if the officer does not know the arrest is illegal). If Mrs. Storer is entitled to a defense to the crime with which she is charged, the question whether the circumstances warrant the defense is appropriately left for trial. *See State v. Boilard*, 488 A.2d 1380, 1387–90 (Me.1985); 1 C. Wright, *Federal Practice & Procedure* § 191, at 687 (2d ed. 1982) ("[a] pretrial motion is not the proper method of raising a defense or objection that will require the trial of the general issue"). Similarly, a trial is the place to determine if Mrs. Storer used "force" with the "intent" necessary to satisfy the elements of the obstructing justice charge. *See United States v. Knox*, 396 U.S. 77, 83 & n. 7, 90 S.Ct. 363, 367 & n. 7, 24 L.Ed.2d 275 (1969) ("the question whether Knox's predicament contains the seeds of a 'duress' defense, or perhaps whether his false statement was not made 'wilfully' as required by [the statute at issue], is one that must be determined initially at his trial," and not in a Rule 12(b)(1) motion). The court should not have dismissed the charge against Kathryn Storer.

The entry is:

Order suppressing evidence and dismissing the charge of obstructing government administration vacated.

All concurring.