MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:    2018 ME 37
Docket:      Aro-17-98
Submitted
  On Briefs:  October 24, 2017
Decided:     March 15, 2018

Panel:        SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## STATE OF MAINE

v.

## DAVID L. SULLIVAN

SAUFLEY, C.J.

[¶1]   David L. Sullivan appeals from a judgment of conviction for aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(I) (2017), unlawful possession of a scheduled drug (Class C), 17-A M.R.S. § 1107-A(1)(B)(3) (2017), and unlawful possession of oxycodone (Class C), 17-A M.R.S. § 1107-A(1)(B)(4) (2017), entered by the court (Aroostook County, *Stewart, J.*) following a jury trial.  Sullivan argues that the court (*Soucy, J.*) erred in denying his motion to suppress evidence that was found in the curtilage of his home and that the trial court abused its discretion when it denied his motion to exclude other evidence on the basis of a discovery violation.  We affirm the judgment.

2

## I. BACKGROUND

[¶2]  After conducting a hearing on Sullivan's motion to suppress, the court found the following facts, which are supported by the record viewed in the light most favorable to the court's order.[1]  *See State v. Kierstead*, 2015 ME 45, ¶ 2, 114 A.3d 984.  On March 27, 2013, a woman[2] was arrested outside of a Bangor motel after attempting to buy a large quantity of oxycontin pills.  Her arrest gave rise to probable cause to search her home in Caribou, which she shared with Sullivan.  Two law enforcement officers, a special agent from the Maine Drug Enforcement Agency and a sergeant from the Aroostook County Sheriff's Office, went to the Caribou home pending issuance of a search warrant.  Their purpose in going to the home was to conduct a "security check" and thereby prevent the destruction of evidence and ensure the safety of officers arriving at the home with the anticipated warrant.

[¶3] Sullivan's Caribou home is a mobile home with a porch on the front and an addition extending from the back.  It is located down a long driveway and is surrounded by woods.  When the officers arrived at the home shortly

---

[1]  In its brief, the State combined the motion to suppress facts and the trial facts.  For future reference, this makes appellate review of the order on the motion to suppress more difficult.

[2]  That woman died on November 22, 2014.

after 7:30 p.m., it was dark outside, and they observed several security cameras mounted around the house.

[¶4]   The officers knocked on the front door and announced their presence.  A dog barked from inside the house, but no one answered.  The officers then left the front porch and walked around the house to see if there was a rear door.  As they walked around the side of the house, within a few feet of the home, the officers came upon two plastic shopping bags that were sitting on the ground.  The bags were nearly translucent, and it was immediately apparent that they contained drug paraphernalia.  The bags emitted a strong odor of marijuana.  Because the bags sat atop fresh snow and had no footprints around them, it appeared that they had recently been thrown from a window.  The officers took the bags back to their vehicle, searched the bags' contents, and discovered contraband.  Eventually, the home was searched on the basis of the warrant obtained that evening.

[¶5]  A year later, on March 7, 2014, Sullivan was charged by indictment with trafficking and possession.  He pleaded not guilty to all charges and moved to suppress the evidence of the two bags discovered outside of his home.  After a hearing, the court (*Soucy, J.*) denied the motion.[3]

---

[3]  The defendant filed a brief motion for further findings pursuant to M.R.U. Crim. P. 41A(d), specifically asking the court to find "that the inspection of the bags was done with the aid of

4

[¶6]   Almost three years after the indictment, the court (*Stewart, J.*) held a three-day jury trial in January 2017.[4]   Immediately before trial, Sullivan moved to exclude the testimony of a pharmacist as a discovery sanction on the ground that the State had substituted the witness for another pharmacist the day before trial.   The court denied the motion, the pharmacist testified, and Sullivan cross-examined her vigorously.

[¶7]   The jury found Sullivan guilty of all three charges.   The court sentenced him to twelve years of imprisonment with all but four years suspended and three years of probation for the aggravated trafficking charge. The court also sentenced Sullivan to one year of imprisonment for each of the other charges, to be served concurrently with the sentence for aggravated trafficking.   Sullivan timely appealed.   *See* 15 M.R.S. § 2115 (2017); M.R. App. P. 2(b)(2)(A) (Tower 2016).[5]

---

flashlights, in the dark, in the curtilage of the home." The court denied the motion, having determined in its original order that the bags were located within the curtilage.

[4] The record does not reveal whether Sullivan was incarcerated while he awaited trial.

[5] The notice of appeal was filed before September 1, 2017, the effective date of the restyled Maine Rules of Appellate Procedure. *See* M.R. App. P. 1.

## II. DISCUSSION

A.    Denial of the Motion to Suppress

1.    Standard of Review

[¶8]   We review the denial of a motion to suppress by applying the familiar appellate process—the  motion court's factual findings are reviewed for clear error and its legal conclusions are reviewed de novo.  *State v. Prinkleton*, 2018 ME 16, ¶ 17, ---A.3d---.  A finding of fact is clearly erroneous only if the record lacks any competent evidence to support the finding.  *State v. Harriman*, 467 A.2d 745, 747 (Me. 1983).  Once the facts have been established, a motion court's ultimate determination that evidence was located within or outside the curtilage of a home—as well as its conclusion that a search was or was not reasonable—is a conclusion of law and is subject to de novo review. *United States v. Brown*, 510 F.3d 57, 64 (1st Cir. 2007).

2.    Sullivan's Motion

[¶9]  Sullivan's central argument is that evidence obtained as a result of the officers' search of the bags they discovered within his "curtilage" should have been excluded because the officers had not obtained a warrant and no exception to the warrant requirement applied.

6

[¶10]  The Fourth Amendment of the United States Constitution sets limits on warrantless law enforcement searches of the "curtilage."[6]  *State v. Trusiani*, 2004 ME 107, ¶ 10, 854 A.2d 860; *Oliver v. United States*, 466 U.S. 170, 180 (1984).  As always, the touchstone of a Fourth Amendment inquiry is whether the actions of the State were reasonable, *Ohio v. Robinette*, 519 U.S. 33, 39 (1996), but a person's reasonable expectation of privacy in the space outside his home is not identical to the expectation of privacy he has in his home.  *See Trusiani*, 2004 ME 107, ¶ 15, 854 A.2d 860 ("Although the curtilage of the home is protected from unreasonable entries and searches . . . the State is allowed to intrude into the home's curtilage under certain circumstances, including accessing the entry to a dwelling while conducting legitimate law enforcement activities.").

[¶11]  When a defendant seeks to suppress evidence found during a warrantless search alleged to have taken place within the curtilage, the motion court will first determine whether the evidence at issue was found within the defendant's curtilage.  *Id.* ¶ 11.  If the evidence was found within the curtilage,

---

[6]  The United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  The Maine Constitution provides, "The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures . . . ."  Me. Const. art. I, § 5.

the court must determine, as a matter of law, whether the search was undertaken consistent with the Constitution—that is, whether the search was otherwise reasonable, falling within an exception to the warrant requirement. *See id.* ¶¶ 11, 15.

[¶12]  In the matter before us, we begin by examining the motion court's determination that the bags observed by the officers were within Sullivan's curtilage.  If the bags were within the curtilage, we must determine whether the officers' actions were reasonable in light of two well-recognized exceptions to the warrant requirement: (i) the plain view exception, and (ii) the exception for a temporary seizure to secure a residence.  We also consider whether, if the ensuing search of the bags was unlawful, the evidence is nonetheless admissible pursuant to the inevitable discovery doctrine.

a.      Defining the "Curtilage"

[¶13]  The motion court concluded, with little discussion, that the bags were located within Sullivan's curtilage.[7]  The "extent of the curtilage is determined by factors that bear upon whether an individual reasonably may

---

[7] Although the State argued at the motion hearing that Sullivan had no ownership, possession, or control of the premises, and therefore had no reasonable expectation of privacy in the curtilage, the motion court found that Sullivan was a "part owner of the premises," and the State does not challenge that finding.

8

expect that the area in question should be treated as the home itself." *United States v. Dunn*, 480 U.S. 294, 300 (1987). The "central component of this inquiry [is] whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." *Id.* (quotation marks omitted). Four nonexclusive factors will guide the court in determining whether an area is within the curtilage: (1) the proximity of the area to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) steps taken by the resident to protect the area from observation by people passing by. *State v. Boyington*, 1998 ME 163, ¶ 7, 714 A.2d 141; *see also Dunn v. Commonwealth*, 360 S.W.3d 751, 758-59 (Ky. 2012) (discussing the *United States v. Dunn* factors).

[¶14]  Here, the bags at issue were found in plain view on the ground. The record does not identify any fence or other obstruction that might indicate an intent to keep the area private, and the boundaries of Sullivan's land are not identified.[8]  Nor is there evidence of any steps taken to protect the area from observation.  There is evidence, however, to support the conclusion that the

---

[8] Sullivan seems to emphasize the fact that the officers left the plowed area of the driveway when they walked around the side of the house, as if by leaving an area unplowed Sullivan had manifested an intent to maintain privacy.  The court, however, did not determine whether that fact was relevant. Sullivan also emphasizes that the officers made their observations using flashlights.  The fact that an area is dark in the nighttime does not necessarily suggest a desire to keep the area private.

bags were within the curtilage of the home given their proximity to the window from which they had apparently been recently discarded and the fact that they were located toward the rear of the home within the "L" created by the addition. Because the State did not affirmatively dispute that the bags were within the curtilage, we do not disturb the court's conclusion that the bags were within the curtilage when first observed by the officers.

              b.        Applicability of Exceptions to the Warrant Requirement

                  i.        The Plain View Exception

[¶15]   We next consider whether, given their placement within the curtilage, the bags could be seized by the officers in the absence of a warrant. The pertinent exception to the warrant requirement here is the plain view exception, pursuant to which objects falling into the plain view of an officer who is legitimately in a position to perceive the objects are subject to seizure without violating the defendant's Fourth Amendment rights. *Coolidge v. New Hampshire*, 403 U.S. 443, 465-66 (1971).  In order for the plain view exception to the warrant requirement to apply, the "incriminating character" of the evidence must be "immediately apparent," *State v. McNaughton*, 2017 ME 173,

¶ 42, 168 A.3d 807, and the officers must have a legitimate reason to be in the place from which they make their observation, *Coolidge*, 403 U.S. at 465-66.

[¶16]  Here, the suppression court found that the officers discovered the bags inadvertently and that the incriminating character of the contents of the bags—drugs and paraphernalia—was immediately apparent.  Thus, the officers' seizure of the bags was reasonable as long as their "security check" was proper and gave them the authority to be within Sullivan's curtilage when they made their inadvertent observation.  *See United States v. Delva*, 858 F.3d 135, 149 (2d Cir. 2017) (observing that evidence discovered in plain view during a "protective sweep" of an apartment is admissible).  We next consider that question.

ii.      Temporary Seizure to Secure the Residence

[¶17]  The State argues that the officers' "security check" was justified pursuant to the exception to the warrant requirement that permits officers to temporarily secure a residence to prevent the destruction of evidence while pursuing a warrant.  *See Illinois v. McArthur*, 531 U.S. 326, 333 (2001); *United States v. Parker*, 549 F.3d 5, 9 (1st Cir. 2008).  Officers may temporarily secure a residence if (1) the officers have probable cause to believe the home contains evidence of a crime; (2) the officers have reason to believe that evidence could

be destroyed before they obtain the warrant; (3) the officers make reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy; and (4) the time period lasts no longer than reasonably necessary for the police to obtain a warrant.[9] *McArthur*, 531 U.S. at 331-33.

[¶18]  Applying the *McArthur* factors here, the suppression court found that the officers had probable cause to believe that the home contained drugs. Given the arrest of Sullivan's housemate and her subsequent failure to return home following an attempt to purchase a significant quantity of drugs, the police had reason to believe that evidence of drugs at Sullivan's home might be destroyed.  By walking around the side of the house, the officers intruded upon Sullivan's privacy only minimally.  The police obtained a warrant within five hours after arriving at the residence.

[¶19]  We emphasize that the third *McArthur* factor most strongly supports the reasonableness of the officers' conduct here because, in entering Sullivan's curtilage, the officers only minimally intruded on his privacy.  *Id.* at 332.  There is no question that the officers were authorized to approach

---

[9]  We also note an additional factor that is pertinent here.  The officers at Sullivan's home were motivated not only by a desire to prevent destruction of evidence, but also by an intent to ensure the safety of officers and others arriving at the scene.  Given the presence of mounted security cameras, the remote area, and the size of the drug purchase that motivated officers to seek a search warrant, this was a reasonable concern.

Sullivan's front door, because Sullivan had no reasonable expectation of privacy in the access that all members of the public are invited to utilize. *See Trusiani*, 2004 ME 107, ¶ 15, 854 A.2d 860; *United States v. Bain*, 874 F.3d 1, 12-13 (1st Cir. 2017).

[¶20] Recognizing this implied invitation to approach a home, we have held that a police officer responding to a complaint about a barking dog did not violate a defendant's reasonable expectation of privacy when he walked to a side door, knocked, received no answer, and glanced into a basement window, only then observing several marijuana plants. *State v. Cloutier*, 544 A.2d 1277, 1279, 1281 (Me. 1988). In a case that is very similar to the one before us, *United States v. Daoust*, 916 F.2d 757, 758 (1st Cir. 1990), the United States Court of Appeals for the First Circuit held that police officers did not act improperly when they walked to the back door of a house given that the front door was inaccessible and they had received no answer after knocking at a cellar window. *Id.* Their observation of a handgun, observed in plain view from the back of the house, did not render the handgun inadmissible. *Id.*

[¶21] Here, as in *Daoust*, the officers were not "simply snooping" when they went to the back door. *Id.* at 758. The officers' conduct in briefly walking to the back of the house to see whether there was a rear door was only

minimally invasive of Sullivan's privacy. Balanced against the officers' legitimate interest in protecting themselves and preventing the destruction of evidence, their conduct was reasonable. *See McArthur*, 531 U.S. at 330 ("When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, . . . certain general, or individual, circumstances may render a warrantless search or seizure reasonable."). They were, therefore, legitimately in a place to see the bags which were sitting unprotected and uncovered on the snow.

### iii.    Inevitable Discovery Exception

[¶22]  Finally, we must determine whether the officers' conduct, not only in seizing the bags but also in searching the bags prior to the issuance of a warrant, renders the evidence of the contents of the bags inadmissible. Given that there was no exigency or other circumstance permitting the officers to search the contents of the bags immediately, the proper course for the officers would have been to await the issuance of a warrant before conducting any search. *See Horton v. California*, 496 U.S. 128, 135 (1990) (explaining that the plain view exception permits warrantless seizure but does not permit a warrantless search); *Segura v. United* States, 468 U.S. 796, 810 (1984) (holding that a warrantless temporary seizure to secure a residence is proper, but

14

observing that a search conducted in the process would not be proper). However, on these facts, the officers would have been justified in seizing the bags and retaining them until a warrant issued. Because they otherwise would have retained the bags while awaiting a warrant, the inevitable discovery exception may apply with respect to their immediate search of the bags' contents.

[¶23] The inevitable discovery exception permits the use of evidence that would otherwise be excluded when that evidence "inevitably would have been discovered by lawful means." *State v. St. Yves*, 2000 ME 97, ¶ 18, 751 A.2d 1018 (quotation marks omitted). In determining whether to apply the inevitable discovery exception, we consider whether (1) the evidence could have been gained lawfully from information that is truly independent from the warrantless search; (2) the evidence inevitably would have been discovered by such lawful means; and (3) the application of the inevitable discovery exception neither provides an incentive for police misconduct nor significantly weakens Fourth Amendment protections. *State v. Nadeau*, 2010 ME 71, ¶ 38, 1 A.3d 445 (quotation marks omitted).

[¶24] Application of these factors in this case is straightforward. The officers had lawfully obtained the information that led them to believe with

some certainty that the bags contained contraband. They obtained that information from their initial plain view observation of the bags, not an improper search. If the officers had merely seized the bags—which we have established was lawful—they inevitably would have discovered the drugs once they obtained the search warrant.[10] *See id.*

[¶25] Finally, we examine whether the application of the inevitable discovery exception in this instance would significantly weaken Fourth Amendment protections or provide an incentive for police misconduct. We conclude that it would not. We are examining here a very narrow intrusion on the protections of the Fourth Amendment: officers who had lawfully seized translucent bags recently thrown from a window, who knew those bags contained some contraband, promptly inventoried the bags instead of waiting

---

[10] The suppression court here did not rely on the inevitable discovery exception in order to admit the contents of the bags, and therefore did not make a finding about whether the bags inevitably would have been discovered by lawful means. However, because the officers had seized the bags and were awaiting a search warrant, the record compels the finding, by a preponderance of the evidence, that the officers would have inevitably discovered the contents of the bags. *See State v. Storer*, 583 A.2d 1016, 1020 (Me. 1990). In *Storer*, we held that the record compelled a finding that drugs would inevitably be discovered in very similar circumstances. *Id.* Officers had observed two bags containing marijuana outside of the defendant's home. *Id.* The first bag was within the curtilage of the home, and the second bag was across the street. *Id.* The officers immediately searched both bags. *Id.* They then detained Storer while seeking a warrant on the basis of the evidence in the bags. *Id.* The warrantless search of the first bag was improper, but the search of the bag discovered across the street—outside of the constitutionally protected curtilage—was appropriate. *Id.* We held that because the officers would have immediately searched the first bag once they had obtained a warrant on the basis of the bag discovered across the street, the first bag "inevitably would have been discovered by lawful means." *Id.* at 1020.

for a warrant to issue. There is no indication in this record that the officers intended to subvert the Fourth Amendment's warrant requirement, and there is no reasonable concern that application of the inevitable discovery exception in this instance will create an incentive for future misconduct.

B.     Denial of the Motion to Exclude for Discovery Sanctions

[¶26]  Sullivan also argues that the court erred in denying his motion to exclude the testimony of a pharmacist because the State had only recently notified Sullivan that this pharmacist would testify in the place of another pharmacist who had also been on the witness list. We review a decision not to exclude evidence for an abuse of discretion. *State v. Dolloff*, 2012 ME 130, ¶ 30, 58 A.3d 1032. "Only when the defendant can establish that the effect is so significant as to deprive him of a fair trial will we vacate on" the basis of any alleged discovery violation. *State v. Silva*, 2012 ME 120, ¶ 8, 56 A.3d 1230.

[¶27]  Here, the pharmacist who testified had been on a witness list provided by the State to Sullivan early in the discovery phase, and Sullivan cross-examined her vigorously at trial. On this record, Sullivan has not shown that her testimony deprived him of the right to a fair trial.

The entry is:

Judgment affirmed.

John W. Tebbetts, Esq., Smith & Associates, Presque Isle, for appellant David L. Sullivan

John M. Pluto, Asst. Dist. Atty., Prosecutorial District No. 8, Caribou, for appellee State of Maine

Aroostook County Superior Court docket number CR-2014-132
FOR CLERK REFERENCE ONLY