STATE OF MAINE                                  UNIFIED CRIMINAL COURT
AROOSTOOK, ss                                   LOCATION: CARIBOU
                                                DOCKET NO. AROCD-CR-19-00366


STATE OF MAINE                    )
                                  )
                                  )
        v.                        )        ORDER ON MOTION TO SUPPRESS
                                  )
                                  )
                                  )
THOMAS POND                       )
                                  )


The Defendant was charged by the State in a two-count indictment with the offenses of

Aggravated Trafficking in Scheduled Drugs, Class A, and Unlawful Possession of Scheduled

Drugs, Class C. The events that served as the State's basis for the charges were alleged to have

occurred in Caribou on or about August 7, 2019.

Through his motion to suppress, Defendant contends that the officer lacked articulable

suspicion to detain Defendant, his vehicle or his passenger. Further, the Defendant contends that

search of his vehicle without his consent was impermissible.

A hearing on the Defendant's motion to suppress was held on August 23, 2021. The

Defendant was present and represented by Alan Harding, Esq. The State was represented by

Assistant District Attorney Christiana Rein, Esq. The court received testimony from Officer Chad

Cochran of the Caribou Police Department. Defendant called no witnesses and offered no

evidence.

Based upon the evidence presented at the hearing, the court issues the following findings

of fact, conclusions of law, and resulting order:

1

## Findings of Fact

On the evening of August 7, 2019, the Houlton communications center received a report from Victoria Dugal (hereinafter "Dugal") that she observed a Chevrolet pickup truck operating on Route 1 in Caribou in an erratic manner and the truck hit a construction cone. The report included a description of the truck and a partial plate number. The communication center relayed the information and Caribou police officer Chad Cochran (hereinafter "Cochran") was dispatched to investigate the report. Cochran was in uniform and was in a marked police cruiser. He proceeded to Route 1 south in Caribou. There was very little traffic at this time. As Cochran was headed south on Route 1, he observed tail lights on the Doyle Road heading away from Route 1. He proceeded to follow the tail lights on the Doyle Road. The vehicle proceeded to the West Presque Isle Road and likewise, Cochran continued his pursuit. At this time, Cochran did not have his flashing blue lights activated.

As Cochran drew closer to the vehicle, he observed that the vehicle was a truck that was similar in description to the one reported by Dugal. In addition, the partial plate number matched the information provided by Dugal. Cochran observed the operator of the truck hitting the breaks many times. For no apparent reason, the truck simply stopped in the middle of the travel lane without the use of a blinker or emergency flasher lights. Cochran exited his cruiser and approach the truck on foot to make sure the driver was "all set". As he was walking to the truck, it began to slowly roll forward. Cochran yelled, "hey". Cochran did not ask or order the Defendant to stop. He followed "hey" with "are you all set?"

The driver stopped the truck and Cochran spoke to the driver from outside the driver's window. The driver indicated that he stopped because he thought he was being followed. Cochran asked the operator for his license, registration, and proof of insurance. The operator identified

2

himself as Thomas Pond (hereinafter the "Defendant"). The Defendant indicated that he did not have his license on him. The Defendant appeared nervous and exhibited fast and shaky speech. Cochran noted that there was another occupant in the vehicle, a woman. Cochran asked the woman for her name, date of birth and last four digits of her social security number. The woman was somewhat evasive. She appeared hesitant in providing the name and date of birth and did not know the last four digits of her social security number. The woman identified herself as Brittany Hanson with a date of birth of November 22, 1995.

Cochran returned to his cruiser to run the names of the Defendant and the woman. After running the information provided by the Defendant and the woman in the officer's information system, he determined that no match was found for the woman. Cochran returned to the Defendant's truck to continue with his inquiry as to the woman's identity.

When the officer inquired again as to her date of birth, she provided a different date of birth of October 25, 1995. The officer returned to the cruiser to run the information and again, no match was found in the officer's information system. Cochran went back to the truck and asked for information from the Defendant regarding the woman. The Defendant confirmed the name previously provided by the woman. This information would later be shown to have been false and was known to the Defendant to be false. The court notes that at the same time Cochran was continuing to investigate the woman's identity, he was also asking follow up questions of the Defendant to dispel his concerns that the Defendant may be operating the vehicle while under the influence of intoxicants.

Unable to confirm the woman's identity, Cochran then proceeded around the passenger side of the truck to speak with the woman. The elapsed time from the initial interaction with the Defendant to the time when the officer opened the passenger door to speak with the woman was

3

approximately 13 minutes. The elapsed time from the final question of the Defendant regarding his erratic operation of the truck to the time when the officer opened the passenger door to speak with the woman was approximately 3 minutes.

The woman initially reported she had a Maine state identification card and then stated she did not have a Maine State identification card. She was fumbling around in her pursue when she was asked for other material with her name on and Cochran observed drug paraphernalia in the form of a hypodermic needle that fell out of an eyeglass case in her purse.

Cochran proceeded to search the woman's purse and found the needle, aluminum foil, an apparatus for snorting drugs, and a rock material that he identified, based upon his training and experience, as consistent with methamphetamine. The woman informed Cochran that the substance was methamphetamine or fake methamphetamine that was given to her by another person for her to attempt to sell. Cochran then searched the passenger seat area and the area within arm's reach of the front passenger seat. Cochran observed a glass pipe with burn marks on it in the center console cup holder. Cochran observed that the glass pipe was drug paraphernalia commonly used to smoke methamphetamine.

At that point, Cochran placed the woman in handcuffs and inquired of the Defendant whether Cochran had his consent to search the remainder of the truck. The Defendant replied, "I would rather you not." Cochran proceeded to search the remainder of the truck without the Defendant's consent. The search of the truck revealed a small Tupperware container with methamphetamine contained within it.

## Analysis

This case does not involve a traditional traffic stop. This case involves the approach by a law enforcement officer to the Defendant's vehicle while he was stopped in the middle of the travel

4

lane.  As Cochran was walking up to the Defendant's vehicle to make sure the Defendant was not in any distress and make sure he was "all set", the Defendant started to roll forward and the officer yelled to him, "hey".  Cochran did not ask or order the Defendant to stop, and he followed "hey" with "are you all set?"  "Not 'every contact between police and a citizen implicates the Fourth Amendment right to be free from unreasonable searches and seizures; an officer may approach a citizen and engage in a consensual conversation without effecting a detention for purposes of the Fourth Amendment, and thus need not have an articulable suspicion before engaging in that conversation.'" *State v. Cunneen*, 2019 ME 44, ¶15.   However, what is initially a simple community encounter may transition to a seizure.  As noted by the Law Court in *State v. Garland*:

> "[w]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. State of Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877, 20 L. Ed. 2d 889 (1968). Officer Langella by asking Garland for identification, by reason of his authority as an officer of the law, effectively restrained the defendant's resumption of his journey and his driving away; this police action brought into play the protections of the Fourth Amendment against unreasonable seizures as applied to the states by the United States Constitution, Amendment XIV."

*State v. Garland*, 482 A.2d 139, 142 (Me. 1984); *See also, State v. Gulick*, 2000 ME 170, P11, 759 A.2d 1085, 1088 (No seizure by merely approaching the car and inquiring of its occupants, however asking for the license, following up with a request for identifying information, and having defendant wait while he ran a check on the status of defendant's right to operate a vehicle- constituted a detention, or seizure, for Fourth Amendment purposes).

In order to justify a seizure, the State must show that the officer had "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Gulick*, 2000 ME 170, P12-P13, 759 A.2d 1085, 1088 (Citing, *State v. Dulac*, 600 A.2d 1121, 1122 (Me. 1992)(quoting *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)).  Brief intrusions based upon reasonable and articulable (1) safety

5

concerns, see *State v. Pinkham*, 565 A.2d 318, 319 (Me. 1989); (2) suspicion that the defendant has committed a crime, see *Terry*, 392 U.S. at 21; *State v. Mehuren*, 594 A.2d 1073, 1075 (Me. 1991); or (3) suspicion that the defendant has committed a traffic infraction, see *State v. Hill*, 606 A.2d 793, 795 (Me. 1992), are "reasonable" and are, therefore, not in violation of the Fourth Amendment. *Id.*

As soon as Cochran asked for the Defendant's license and vehicle information, a seizure occurred. *See, State v. Garland*, 482 A.2d at 142-143 (Me. 1984). As of that moment, the officer had a reasonable articulable suspicion to warrant the intrusion. The eye witness report of erratic operation combined with the officer's own observations of the operator of the vehicle repeatedly tapping the breaks and the dead stop of the vehicle in the middle of the travel lane for no apparent reason were sufficient to form a reasonable articulable suspicion that the driver was in distress or operating under the influence. The Defendant informed the officer that he did not have his license *on him* at the outset of the encounter. Pursuant to 29-A M.R.S. §1408, a driver must have his or her license in their possession when operating a motor vehicle.

The Defendant contends that the additional inquiry regarding the passenger of his vehicle and the search that followed were in violation of his Fourth Amendment rights and *Terry v. Ohio*. In a traffic stop, officers may insist that passengers exit the vehicle without even a reasonable suspicion that they were engaged in wrongdoing. *Maryland v. Wilson*, 519 U.S. 408, 413-15, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997). A police officer may also request identifying information from the passengers in a traffic stop without particularized suspicion that they pose a safety risk or are violating the law, "[s]o long as the request [does] not 'measurably extend the duration of the stop.'" *United States v. Fernandez*, 600 F.3d 56, 57, 62 (1st Cir. 2010). The court's inquiry is therefore into whether the officer diligently pursued a means of investigation that was likely to

confirm or dispel his suspicions quickly. *U.S. v. Sharpe*, 470 U.S. 675, 686 (1985). The reasonableness of the officer's actions must be viewed based upon the totality of the circumstances.

When Cochran asked the passenger for her name, date of birth and last four digits of her social security number, he had no reason to believe that she was engaged in criminal activity. It was simply this officer's standard procedure to identify the occupants of a vehicle involved in a traffic stop. The procedure employed by Cochran was to determine whether there are warrants, bail conditions, or orders prohibiting contact between the occupants of a vehicle involved in a traffic stop. The mere inquiry into the woman's identity clearly did not "measurably extend the duration of the stop." *Fernandez* at 62.

Cochran observed that the woman was being evasive. She appeared hesitant in providing the name and date of birth and did not know the last four digits of her social security number. Both the woman and the Defendant continued to provide Cochran with false information regarding her identity. This information would later be shown to have been false and the Defendant knew it was false.[1] The court notes that at the *same time* Cochran was investigating the woman's identity, he was continuing to asking follow up questions of the Defendant to dispel Cochran's concern that the Defendant may have been operating the vehicle while under the influence of intoxicants.

Within moments of his final question of the Defendant regarding the erratic operation of the vehicle, Cochran observed drug paraphernalia fall out of the eyeglass case in the woman's purse. The search of the purse thereafter yielded additional drug paraphernalia and what appeared

---

[1] It was not until approximately 32 minutes into the interaction that the Defendant finally revealed the true identity of the passenger after having repeatedly participated in the ruse in an attempt to mislead Cochran. The video makes clear that when the Defendant did state that he was "pretty sure he name was Kayla" that may have been a slip by the Defendant. When Cochran asks him to repeat the name, he says "Gayla" with a "G" in a fumble of words. In the cruiser, away from the Defendant and Cochran, the woman was for the first time providing her true identity to another officer. She was in fact Kayla Hanson with a date of birth of November 22, 1999. She had an active warrant for her arrest issued by *this* court in AROCD-CR-2019-40026.

to be methamphetamine. This information caused the officer's initial inquiry to expand to include a drug investigation involving the truck and both occupants.

"Pursuant to the automobile exception, 'the existence of probable cause justifies a warrantless seizure and reasonable search of a motor vehicle irrespective of the existence of exigent circumstances.'" *State v. Melvin*, 2008 ME 118, ¶15, 955 A.2d 245, 250 (Citing, *State v. Ireland*, 1998 ME 35, ¶ 7, 706 A.2d 597, 599)(citing, among others, *U.S. v. Infante- Ruiz*, 13 F.3d 498, 502 (1st Cir. 1994)("It is now established that if the police have probable cause to believe that either a vehicle or a container within a vehicle contains contraband, evidence of crime, or other matter that may lawfully be seized, no Fourth Amendment violation occurs ....")). "Today, the inherent mobility of a motor vehicle coupled with the reduced expectation of privacy associated with it justifies the warrantless search of that vehicle so long as the search is supported by probable cause." *State v. Tomah*, 586 A.2d 1267, 1269 (Me. 1991)(*Citing, State v. Tarantino*, 587 A.2d 1095 (Me. 1991); *United States v. Panitz*, 907 F.2d 1267, 1271 (1st Cir. 1990)).

"Probable cause exists when the officers' personal knowledge of facts and circumstances, in combination with any reasonably trustworthy information conveyed to them, would warrant a prudent person to believe that the area to be searched holds evidence of a crime. . ." *Id.* (Citing, *State v. Drown*, 2007 ME 142, ¶8, 937 A.2d 157, 159). "In order for the plain view exception to the warrant requirement to apply, the "incriminating character" of the evidence must be "immediately apparent," *State v. McNaughton*, 2017 ME 173, ¶ 42, 168 A.3d 807, and the officers must have a legitimate reason to be in the place from which they make their observation, *Coolidge*, 403 U.S. at 465-66." *State v. Sullivan*, 2018 ME 37, P15, 181 A.3d 178, 184. Cochran observed the paraphernalia in plain view after the woman was rummaging around in her pursue. Therefore, the search of her purse was valid.

8

After the search of her purse revealed additional paraphernalia and a substance that appeared to be methamphetamine and the officer observed what appeared to be a methamphetamine pipe sitting in the cup holder, those factors combined with the other factors as set forth above provided Cochran with probable cause to search the Defendant's vehicle. *State v. Michael M.*, 2001 ME 92 ¶6, 772 A.2d 1179, 1182 ("Probable cause to search exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place").

## Conclusion

Based upon the foregoing findings of fact and conclusions of law, the Defendant's motion to suppress is hereby **DENIED**. This matter shall proceed to docket call.

The entry shall be:

For the foregoing reasons, the Defendant's Motion to Suppress is **DENIED**.

Dated: August _31_, 2021

_____
Justice, Maine Superior Court

9